**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Kyle T.,[1] | Case No. 25-cv-02048 (ECT/DJF) |
| Plaintiff, | |
| v. | **REPORT AND** |
| Frank Bisignano, | **RECOMMENDATION** |
| *Commissioner of Social Security*, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kyle T. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Plaintiff argues the Commissioner failed to properly consider his need for a structured living environment or the impact of Tourette's syndrome on his ability to work. Because substantial evidence supports the Decision, the Court recommends Plaintiff's request for relief (ECF No. 9) be denied, Defendant's request for relief (ECF No. 11) be granted, and this matter be dismissed with prejudice.

**BACKGROUND**

I.      **Plaintiff's Claim**

Plaintiff applied for SSI on October 24, 2022, with an alleged disability onset on the same

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

date. (Soc. Sec. Admin. R. (hereinafter "R.") 22, 120.) [2] At that time, he was 26 years old and had previously worked as a Transfer Assistant at a funeral home. (R. 86, 247, 287-288.) Plaintiff alleged he was disabled due to keratoconus, autism, attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, and Tourette's syndrome. (R. 121.)

## II.   Regulatory Background

An individual is considered disabled for the purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish he is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that he has a severe, medically determinable impairment

---

[2] The Social Security administrative record (R.) is filed at ECF No. 7. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers in citing to the Administrative Record. All other record citations refer to ECF docket and page numbers.

or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 416.920(a)(4)(iii).[3]

If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving he cannot perform any past relevant work.  20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform other work existing in a significant number of jobs in the national economy, the Commissioner will find the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

## III.   Procedural History

The Commissioner denied Plaintiff's application for SSI initially (R. 121-131) and on reconsideration (R. 145-155).  On September 20, 2024, at Plaintiff's request (*see* R. 189-190), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 63-107).  An attorney represented Plaintiff, and Plaintiff and a vocational expert testified.  (R. 63-64.)  After the

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R Part 404, Subpart P, App. 1.

hearing, the ALJ considered whether Plaintiff was disabled from October 24, 2022, Plaintiff's alleged disability onset date, through the date of the Decision. (R. 35.)

At step one of the Decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant period. (R. 24.) At step two, the ALJ determined that Plaintiff has keratoconus but that this condition is a non-severe impairment. (R. 25.) The ALJ further determined that Plaintiff has the following impairments, which at least in combination are severe: Tourette's syndrome, ADHD, depression, anxiety, and autism. (R. 24-25.)

At step three, the ALJ addressed the severity of Plaintiff's impairments, including Plaintiff's Tourette's syndrome. (R. 25-28.) The ALJ evaluated Plaintiff's Tourette's syndrome under Listing 11.00 – Neurological Disorders, and specifically under Listing 11.06 – Parkinsonian Syndrome. (R. 25.) The ALJ noted that Tourette's syndrome causes tics in Plaintiff's head and hands, but found no extreme limitation in Plaintiff's use of his upper extremities. (R. 25-26.) The ALJ also found Plaintiff had only moderate limitations in the four areas of mental functioning: (1.) understanding, remembering, or applying information; (2.) interacting with others; (3.) concentrating, persisting, or maintaining pace; and (4.) adapting or managing oneself. (*Id*.) Based on these findings, the ALJ determined that Plaintiff's Tourette's syndrome did not satisfy the criteria for Listing 11.06. (R. 25-26.)

Given his findings that Plaintiff's limitations in the four areas of mental functioning were moderate, the ALJ further determined that Plaintiff's mental health impairments, either alone or in combination, did not meet the requirements for Listings 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), 12.08 (Personality and Impulse-Control Disorders), or 12.10 (Autism Spectrum Disorders). (R. 26-27.) In reaching this determination, the ALJ also considered the "Paragraph C" criteria of Listing Section 12, which

4

require that the claimant: (1.) receives or is in medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (2.) has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. (R. 27-28.) Noting that Plaintiff has never sought psychotherapy, counselling or other mental health treatment in a structured setting, the ALJ determined that Plaintiff's mental health limitations did not satisfy the Paragraph C criteria. The ALJ thus concluded that Plaintiff's impairments do not meet or medically equal any impairment in the Listing. (R. 25-28.)

At step four of the sequential analysis, the ALJ catalogued the mental and physical health evidence in the record (R. 28-34) and determined that Plaintiff has the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; restricted from hazards, such as heights or machinery, but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; limited to a static work environment, tolerating few changes in a routine work setting, and when said changes do occur, any changes in job duties will be explained; limited to simple tasks; limited to routine and repetitive tasks; limited to occasional interaction with coworkers; limited to occasional superficial interaction with the public, with superficial meaning if a member of the public were to approach and ask directions to the nearest restroom, they would be able to provide such information, but that would be the extent of the interaction; never required to operate a motor vehicle during the course of a workday; not able to perform at a production rate pace (e.g. assembly line work) but can perform goal-oriented work (e.g. office cleaner); and limited to frequent handling and fingering bilaterally.

(R. 28.) The ALJ further found that Plaintiff has no past relevant work. (R. 34.)

At step five, the ALJ evaluated whether Plaintiff can perform any job that exists in significant numbers in the national economy. (R. 34.) Based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is able to perform such jobs, including: "linen room attendant" (DOT #222.387-030), an

5

unskilled job that is generally performed at the medium exertional level, with approximately 58,000 positions in the national economy; "counter supply" (DOT #319.687-010), an unskilled job that is generally performed at the medium exertional level, with approximately 87,000 jobs in the national economy; and "industrial sweeper" (DOT #389.683-010), an unskilled job that is generally performed at the medium exertional level, with approximately 298,000 jobs in the national economy.  The ALJ concluded on these grounds that Plaintiff is not disabled.  (R. 35.)

Plaintiff appealed the ALJ's Decision.  The Appeals Council denied Plaintiff's request for review of the Decision (R. 1-4), and this lawsuit followed.

## DISCUSSION

### I.   Standard of Review

The Court's review is limited to determining whether the ALJ's Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id*.  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005)

(remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding the ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.   Analysis

Plaintiff argues the ALJ failed to properly assess his RFC by: (1.) giving insufficient consideration to Plaintiff's reliance on a "structured living environment"; and (2.) failing to properly account for the degree to which Plaintiff's involuntary Tourette's syndrome behaviors would disrupt a standard work setting. RFC is defined as the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a). It is the claimant's burden to prove his functional limitations related to his RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). However, the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 416.945(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). Upon reviewing the record and the ALJ's Decision, the Court concludes the ALJ properly considered the relevant evidence in reaching his determination of

Plaintiff's RFC.

### A.      Reliance on a Structured Setting

Plaintiff contends the ALJ's RFC determination is not a "true and accurate representation of his actual abilities" because the ALJ failed to consider them "within the context of supportive environments he has been a part of." (ECF No. 9 at 15.) Social Security Administration policy requires ALJs to consider the "need for a structured living environment" in assessing an individual's RFC. SSR 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 (July 2, 1996). SSR 96-8p is a binding policy interpretation, which states that "[t]he RFC assessment must be based on all of the relevant evidence in the case record, such as: … [the] *need for a structured living environment*…." *Id.* at *5 (emphasis added). The ALJ in this case was thus required to consider the extent to which Plaintiff needed to be in a structured environment to function.

Plaintiff states that he needs a structured living environment because: (1.) he struggles outside his family home, as demonstrated by his homeschooling since the sixth grade; (2.) his hobbies and daily activities are limited, such as not shopping for his own groceries; and (3.) he is socially isolated. (*Id*. at 13-14.) But living at home with one's parents does not alone equate to needing a "structured living environment". *See Lucas T. S. v. O'Malley*, No. 23-cv-0663 (JRT/DLM), 2024 WL 365320, at *7 (D. Minn. Jan. 8, 2024), *report and recommendation adopted*, 2024 WL 364531 (D. Minn. Jan. 31, 2024) (claimant who lived at home with his family was not limited to a structured living environment when he was "able to live independently from his parents, do household chores, prepare his own meals, do his own shopping, and perform some work—albeit part-time"); *Jacob R. v. Saul*, No. 19-cv-2298 (HB), 2020 WL 5642489, at *5 (D. Minn. Sept. 22, 2020) (no structured living environment limitation was appropriate when claimant

lived with his parents to save money and had previously lived on his own).  If living at home were the only qualification, approximately one third of U.S. adults aged 18 to 34 would qualify as requiring a "structured living environment." *See* United States Census Bureau, *Historical Living Arrangements of Adults* (Dec. 2025).[4]

Plaintiff lives at home and receives support from his parents, but as the ALJ observed, he has not followed through with therapy and other recommended support for his mental health conditions, other than medication.  (R. 28, "Review of the evidence shows that the claimant never sought mental health treatment in a highly structured setting, such as psychotherapy or counselling"; *see also* R. 31, citing R. 434.)  In addition, the support Plaintiff needs from his family is limited.  While Plaintiff does not shop for his own groceries, he testified that he would be capable of grocery shopping if necessary.  (R. 85.)  Plaintiff has no issues with personal care and hygiene.  (R. 314.)  Plaintiff cooks his own meals, does his own laundry, and takes medications without issue.  (R. 315, 111.)  He can follow recipes and make foods such as cupcakes and apple crisp without assistance.  (R. 85-86.)  Plaintiff also testified that he helps his father, who is retired and unable to walk.  (R. 87.)  He has a driver's license, drives his father to appointments, and helps his father get into the car.  (R. 87.)  Plaintiff uses a weight bench to exercise at least once per week and has primary responsibility for walking and taking care of the family dog.  (R. 88.)  Plaintiff testified at the hearing that he wants to live on his own, and though it would be difficult, he thinks he would be capable of doing so.  (R. 85.)

---

[4] *Available at* https://www.census.gov/data/tables/time-series/demo/families/adults.html (last visited Jan. 2, 2026).  The Court takes judicial notice of this Census Bureau data.  *See, e.g., Town of Fletcher v. Hickman*, 165 F. 403, 406 (8th Cir. 1908) (taking judicial notice of census report data regarding city population); *Jones v. Acosta*, No. 2:22-cv-152-DPM, 2024 WL 4828045, at *4 n.2 (E.D. Ark. Nov. 19, 2024) (same).

Plaintiff's most significant restriction appears to be his limited ability to socialize with others. Although Plaintiff is relatively socially isolated, he has close relationships with his mother and two siblings, whom he describes as his "best friends." (R. 404.) And while developing friendships is difficult for Plaintiff, he maintains a relationship with a friend from elementary school, whom he considers to be "more like family." (R. 412.) At the time of the hearing, Plaintiff also had a long-distance girlfriend, whom he met online and with whom he maintained contact "every couple of days." (R. 89.)

The ALJ appropriately acknowledged that Plaintiff has significant social limitations and took those limitations into consideration in determining Plaintiff's RFC. The ALJ noted that Plaintiff's Tourette's syndrome tics "worsen in social situations, especially when [he] feels like people are looking at [him]." (R. 29.) Regarding Plaintiff's autism, the ALJ noted that Plaintiff complained of "becoming overstimulated with bright lights, particular sounds, and social settings; difficulty understanding social cues; utilizing social filters, avoiding eye contact; difficulty sustaining attention; and often zoning out." (R. 30.)

In reaching his conclusions, the ALJ carefully considered the opinions of the medical experts. He found persuasive the opinions of Dr. Kathleen Feil and Dr. Hallie Richard, who stated that Plaintiff has "significant issues understanding social cues and utilizing social filters, demonstrating limitations in [his] ability to interact with others", but that he "can interact with others on a brief and superficial basis." (R. 32.) The ALJ was also persuaded by the opinion of consultative examiner Dr. Mai Nhia Khang, who stated that Plaintiff is able to, "understand and follow directions, sustain[] attention and concentration, handle stress and pressure found in entry-level positions, and carry out mental and superficial contact with coworkers and supervisors." (R. 32.) The ALJ found the opinion of Dr. Sandeep Kalola only partially persuasive. (R. 33.) The

10

ALJ accepted Dr. Kalola's opinion that Plaintiff's anxiety increases when he sits for too long. However, citing Plaintiff's relationships with his family and girlfriend, the ALJ rejected Dr. Kalola's characterization of Plaintiff's limitations in interacting with others as "extreme." (*Id.*) The ALJ also rejected the opinion of Dr. Alford Karayusuf that Plaintiff is unable to interact with others or maintain pace and persistence, on the ground that Dr. Karayusuf's opinion was "based on a one-time evaluation almost four years before the alleged onset date." (*Id.*) Plaintiff does not challenge the ALJ's assessment of any of these opinions.

Based on his evaluation of the medical experts and his review of the other evidence in the record, including Plaintiff's treatment history, activities of daily living and subjective testimony, the ALJ found that Plaintiff has significant social limitations, which he incorporated in his determination of Plaintiff's RFC. (R. 28.) He determined that Plaintiff is "limited to a static work environment, tolerating few changes in a routine work setting, and when said changes do occur, any changes in job duties will be explained." (*Id.*) He further limited Plaintiff to "occasional interaction with coworkers" and only "occasional superficial interaction with the public." (*Id.*) The ALJ thus appropriately considered Plaintiff's social limitations and addressed them in Plaintiff's RFC assessment.

Plaintiff points to a handful cases in which courts remanded the decisions based on the ALJs' failure to consider the claimants' need for a structured living environment in crafting their RFCs (ECF No. 9 at 13-15), but these cases are distinguishable. Unlike Plaintiff, the claimant in *Nowling v. Colvin* required constant support due to a medical condition—frequent severe headaches and seizure-like symptoms—that required caregiver assistance. 813 F.3d 1110 at 1116-1118 (8th Cir. 2016). The claimant in *Blake R. v. Berryhill* needed assistance from his mother in nearly all areas of daily living, including showering, and often had bowel movements without the

ability to clean himself.  No. 17-cv-4273 (KMM), 2019 WL 1229828, at *5 (D. Minn. Mar. 15, 2019).  Unlike the claimant in *Jessica B. v. Saul*, No. 19-cv-1276 (DSD/LIB), 2020 WL 5821993, at *7-10 (D. Minn. July 1, 2020), Plaintiff performs household chores and attends both his own and his father's healthcare appointments outside the home without difficulty.  The claimant in *Branson A.L. v. Kijakazi* needed more assistance with his personal care than Plaintiff does, and his family was seeking a personal care assistant to help him.  No. 23-cv-0015 (MJD/DLM), 2023 WL 9111437, at *6 (D. Minn. Nov. 7, 2023).  In contrast, Plaintiff largely cares for himself, testified that he wants to live independently, and believes he is capable of doing so.  (R. 85.)  None of these cases cites similar testimony.[5]  Thus, though Plaintiff does live at home, he does not demonstrate the same attributes courts have found to qualify the home as a "structured living environment."

Plaintiff's claim amounts to a request that the Court reweigh the evidence regarding his ability to work outside the home without structural supports to address his social limitations.  But the ALJ considered and addressed Plaintiff's social limitations in crafting Plaintiff's RFC, and "[i]t is not the role of this court to reweigh the evidence presented to the ALJ."  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).  Because substantial evidence supports the ALJ's conclusions, the Court recommends the ALJ's ruling be affirmed on this issue.

### B.    Tourette's Syndrome

Plaintiff also challenges the Decision on the ground that the ALJ erred in failing to properly address Plaintiff's Tourette's syndrome in his RFC assessment.  (ECF No. 9 at 15-16.)  Plaintiff concedes that the ALJ sufficiently addressed Plaintiff's physical limitations but contends the ALJ

---

[5] Plaintiff also cites *Lucas T. S.*, 2024 WL 365320, at *7, but that case is inapposite because the court did not remand the decision based on the ALJ's failure to account for the claimant's structured living environment.  Rather, the court ordered a remand due to the ALJ's failure to properly consider off-task time and absenteeism.

did not adequately address the "communication limitations" that Plaintiff's Tourette's syndrome presents. (ECF No. 9 at 16.)

The record reflects that Plaintiff's Tourette's syndrome causes him to experience involuntary guttural vocalizations, rapid head movements, and twitching of the legs, shoulders, neck and hands. (R. 80-81, 541.) Plaintiff testified that these symptoms cause people to approach him in public and ask him if he is on drugs. (R. 77.) He further testified, "People will look and point or they will be less likely to want to talk to me or not want to talk to me at all. And it's made finding friends, communities very difficult because everyone thinks I'm a drug addict." (R. 79.) He contends his symptoms significantly impede his ability to be in public or engage in interactions with others in a work setting because they are a source of embarrassment and shame. (ECF No. 9 at 16.)

There can be no reasonable dispute that Plaintiff's Tourette's symptoms have significantly contributed to his social limitations, but Plaintiff's contention that the ALJ failed to consider the limitations they cause is inaccurate. The ALJ acknowledged Plaintiff's testimony and characterized Plaintiff's tics as "severe." (R. 29.) He also found Plaintiff's tics "worsen in social situations, especially when [Plaintiff] feel[s] like people are looking at [him]." (*Id.*; *see also* R. 26, acknowledging Plaintiff's statement that people look at him due to his Tourette's and "say rude comments," which negatively affects his ability to interact with others.) Because he recognized these limitations, the ALJ limited Plaintiff's RFC to only the most superficial interactions with people who do not know him. (*See* R. 28, explaining that "superficial" means "if a member of the public were to approach and ask directions to the nearest restroom, [Plaintiff] would be able to provide such information, but that would be the extent of the interaction.") However, based on a "totality of the evidence," the ALJ found Plaintiff's limitations in interacting with others were only

"moderate" (R. 26-37) and concluded that Plaintiff's statements concerning the limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. (*Id.*)

In support of this conclusion, the ALJ relied the above-cited medical opinions stating that, although Plaintiff had "significant issues understanding social cues and utilizing social filters," he is capable of interacting with others on a "brief and superficial basis" (R. 32), and is able to "carry out mental and superficial contact with coworkers and supervisors" (*id.*). The ALJ also considered Plaintiff's testimony and reports in the record regarding Plaintiff's ability to maintain positive and lasting personal relationships with his family and romantic partner. The ALJ thus relied on substantial evidence in the record, and the Court must defer to the ALJ's assessment of that evidence. *See Perks*, 687 F.3d at 1091.

The cases Plaintiff cites to support his position to do not change the Court's analysis. In *Vargas on behalf of J.P. v. Kijakazi*, No. 2:20 CV 212-PPS, 2021 WL 3088628 (N.D. Ind. July 22, 2021), the court remanded the decision because the ALJ failed to acknowledge the limiting impact of Tourette's syndrome on the claimant's interactions with others, or to explain his conclusion that Tourette's syndrome was not a "severe" impairment. Here, in contrast, the ALJ expressly characterized Plaintiff's condition as a "severe" impairment and considered how his Tourette's symptoms affected his relationships with others.

In *Shearer v. Saul*, No. 20-05031-CV-SW-MDH-SSA, 2021 WL 2936485 (W.D. Mo. July 13, 2021), remand was required because the ALJ failed to properly analyze the medical opinion evidence, *id.* at *6 (citing the ALJ's failure to consider consistency among the medical opinions), and improperly discounted the claimant's subjective testimony, which the court found consistent with the medical record (*e.g., id.* at 7-8, rejecting ALJ's conclusion that claimant's symptoms had

14

improved when later records showed worsening). Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence in this case, and the Decision reflects that the ALJ addressed inconsistencies between Plaintiff's testimony and the medical record regarding the limiting effects of his symptoms (R. 29-32) (citing examiner's medical opinion that Plaintiff can "carry out mental and superficial contact with coworkers and supervisors" and "handle stresses associated with entry level work").

*Matthew E. v. Bisignano*, No. 24-2166-DRM, 2025 WL 1919995 (D. Md. July 10, 2025), is also distinguishable. There, the ALJ improperly rejected the claimant's subjective statements because they were not "validated by objective medical support." *Id*. at *5. The ALJ in this case did not cite to a lack of medical evidence to reject Plaintiff's statements about the impacts of Tourette's symptoms on his communications with others. Rather, the ALJ agreed that Tourette's symptoms interfere with Plaintiff's social interactions (*see, e.g.,* R. 32, acknowledging Plaintiff's "severe social deficits"), but the ALJ identified medical opinion evidence conflicting with Plaintiff's legal claim that these impacts are so disabling that he is unable to work with restrictions. Furthermore, Plaintiff did not testify that he is entirely unable to work. On the contrary, when asked if he could do a job after someone trained him for 30 days, he testified, "If they did it every day consistent [sic], yes, I think I could." (R. 82.) The ALJ's conclusion that Plaintiff is not disabled thus does not amount to a rejection of his subjective testimony.

For these reasons, the authorities Plaintiff cites do not persuade the Court to reject the ALJ's determination. Because the ALJ properly considered the relevant evidence and explained his reasoning, and substantial evidence supports his RFC determination, the Court recommends the Decision be affirmed.

## REPORT AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.      Plaintiff's Request for Relief (ECF No. 9) be **DENIED**;

2.      Defendant's Request for Relief (ECF No. 11) be **GRANTED**; and

3.      This action be **DISMISSED WITH PREJUDICE**.


Dated:  January 22, 2026                          *s/ Dulce J. Foster*
                                                  DULCE J. FOSTER
                                                  United States Magistrate Judge


## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).